IN THE UNITED STATES DISTRICT COURT
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FILIBERTO ROBLES ALVARADO, JOEL CASTILLO, JAVIER CHAVEZ-CIPRIANO, JESUS CHAVEZ-CIPRIANO, FELICIANO CURIEL GIL, OSCAR ESPINOZA, GERARDO GUZMAN, ELEAZAR HERNANDEZ GIL, DAVID MALDONADO, JOSE ANGEL MALDONADO, MIGUEL ANGEL PAZ, PEDRO PAZ ESTRADA, ISAAC PENA RAMIREZ, WINGER RAMOS and JOEL SIXTOS SALVADOR | § § § § § § § § § § § § § § | |
| | § § | CIVIL ACTION NO. H-06-CV-02113 |
| Plaintiffs, | § § | |
| V. | § § | |
| SHIPLEY DONUT FLOUR & SUPPLY CO., INC. d/b/a SHIPLEY DO-NUTS | § § § § | |
| Defendant. | § | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. SHARI JULIAN**

In reply to Plaintiffs' response to Defendant's motion to exclude the testimony of Dr. Julian ("Plaintiffs' Response"), Defendant respectfully shows the Court as follows:

**A.    DR. JULIAN'S CREDENTIALS**

Plaintiffs devote a substantial portion of their Response to an argument extolling Dr. Julian's "impressive qualifications." *See* Plaintiffs' Response at 3-6. Several aspects of this argument merit a brief discussion. First, a *Daubert* analysis focuses not on the expert's credentials, but on whether the expert's methodology is reliable and grounded in sound principles of the applicable science. Indeed, the Supreme Court's *Daubert* opinion notes that the experts then at issue "possessed impressive credentials." *See Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 583 & n.2 (1993). Nevertheless, the Court emphasized that the inquiry must be based not on the expert's background but, rather, whether the expert's conclusions are "derived by the scientific method" and "supported by appropriate validation." *Id.* at 590. In formulating its suggested factors for evaluating the admissibility of expert testimony (*see* Defendant's Motion at 5), the Supreme Court did not include the expert's credentials or qualifications. 509 U.S. at 593-95.[1] Thus, an analysis of credentials generally is not germane to a *Daubert* inquiry.

Even if an analysis of credentials were germane, Shari Julian's credentials are not impressive as to the matters upon which she opines in this case. Dr. Julian testified that her Ph.D. is in education and public administration (Julian Depo. at 147)[2] and "not in the areas of psychological assessment" or "mental health assessment." *Id.* at 148. Further, Dr. Julian noted that she is not a "psychologist," but merely a "licensed professional counselor and licensed marriage and family counselor." *Id.* at 168. Since the proffered testimony deals with the science of psychology generally, and psychological assessment in particular, these credentials seem marginal at best. Nor are these credentials rendered "impressive" merely by Plaintiffs describing Dr. Julian as a professional who "specializes in victimization" (Plaintiffs' Response at 5) or as "concentrating in multi-cultural dynamics and inclusivity" *Id.* at 3.[3]

---

[1] *See Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 273, 278 (5th Cir. 1998) (en banc) (noting that the expert's qualifications were "outstanding," but excluding his testimony based upon a *Daubert* analysis); *see also Brock v. Merrell Dow Pharmaceuticals, Inc.*, 874 F.2d 307, 311 (5th Cir. 1989) (Trial court is not required to "accept uncritically any sort of opinion espoused by an expert merely because his credentials render him qualified to testify."), *cited with approval* in *Daubert*, 509 U.S. at 596.

[2] Dr. Julian's deposition testimony is attached as Exhibit B to Defendant's Motion to Exclude.

[3] Although not material to the current motion, Defendant notes that Plaintiffs' statement that Dr. Julian has in the past been retained by Baker Botts to testify as an expert (Response at 5-6) is incorrect. While Dr. Julian did testify to a very vague recollection of that (Julian Depo. at 6), she could not remember any Baker Botts lawyers or cases for whom or on which she worked. Dr. Julian's very vague recollection was mistaken. She definitely was not retained to work on any employment discrimination matters by the Houston office of Baker Botts, contrary to her testimony. And firm records do not indicate that she has been retained at any time by any Baker Botts office for any matter.

## B.    *DAUBERT* FACTORS

Plaintiffs make no attempt to support Dr. Julian's proffered opinions in terms of any of the Supreme Court's *Daubert* criteria.  This is strange, particularly since it is Plaintiffs' burden to " . . . demonstrate that the expert's findings and conclusions are based on the scientific method . . . ."  *Moore,* 151 F.3d at 276.

Thus, for example, Plaintiffs attempt no showing that their expert's conclusions can be tested, nor do they engage in any discussion of error rates or controls.  Instead, Plaintiffs repeatedly invoke an internet-sourced excerpt of "FAQs" ("Frequently Asked Questions") produced in passing by Dr. Julian at her deposition.  Plaintiffs use this excerpt to argue, in effect, that all methodological decisions must be left to the discretion of the expert.  However, not only does the internet-excerpt fail to support the sweeping assertions concerning an expert's discretion contained in Plaintiffs' Response,[4] it contradicts the Fifth Circuit's holding that *Daubert*

> requires some objective, independent validation of the expert's methodology.  The expert's assurances that he has utilized generally accepted scientific methodology is insufficient.

*Moore*, 151 F.3d at 269 (citations omitted).

Indeed, Plaintiffs cite virtually no authority for their few arguments.  The only case discussed in Plaintiffs' Response (at 2-3) is *United States v. 14.38 Acres of Land*, 80 F.3d 1074 (5th Cir. 1996), a condemnation action which bears no similarity to the case at bar.  There, the court of appeals was careful to confine its holding to the unique circumstances of property valuation in eminent domain cases.  *Id.* at 1077-78.[5]

---

[4] *See* Affidavit of Dr. Randall Price (Exhibit 1 hereto) generally and at p. 6, n. 2.

[5] Note also that the *14.38 Acres of Land* opinion impliedly questions whether *Daubert* even applies to "all" expert evidence or that which is not strictly "scientific."  80 F.3d at 1078 & n.3.  Of course, this implication was later rejected by the Supreme Court in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

C.    **SPECIFIC INDICIA OF UNRELIABILITY**

Plaintiffs' Response either does not address or fails to effectively explain the various methodological flaws described with specificity in Defendant's Motion. These include the following:

1.    Dr. Julian's admitted departure from scientific checks and balances that would routinely have been employed in a non-judicial mental status evaluation. *See* Defendant's Motion at pp. 2-3, 7-8; Price Aff. (Ex. 1 hereto) at ¶¶ 10, 15; Price Report at ¶¶ 1-6.[6] This is directly contrary to the Supreme Court's requirement that the expert employ "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.

2.    Plaintiffs do not respond to Dr. Julian's failure to deal with the lack of avoidance behavior in this case. *See* Defendant's Motion at pp. 10-11; Price Aff. (Ex. 1) at ¶¶ 16-18; Price Report at ¶ 6. From both a clinical perspective (as specifically noted in the DSM-IV) and a common sense application of the scientific method, a reliable diagnosis of PTSD cannot be maintained without some exploration and explanation of the undisputed facts that many of the Plaintiffs exhibited no avoidance behavior at all and even went out of their way to refer friends and loved ones to the workplace. *See also* Julian Depo. at 14 (DSM-IV "like the Constitution . . . This is our bible . . . we depend on this as our ground rules.")

3.    Plaintiff's rationale for Dr. Julian's failure to utilize (or even consider) psychometric instruments (Response at 7-8) is not substantively supportable. Price Aff. at ¶¶ 12-13; *see also* Defendant's Motion at 6-7.

---

[6] Dr. Price's Report is attached as Exhibit A to Defendant's Motion to Exclude.

4.     Plaintiffs do not attempt to deal with Dr. Price's point (Report at ¶ 8; Price Aff. at ¶¶ 19-20) that Dr. Julian's identical diagnoses of all twelve Plaintiffs are, *a priori*, highly improbable.[7]

5.     Plaintiffs' Response does not address the inappropriateness of Dr. Julian's human resource opinions (*see* Defendant's Motion at pp. 16-18). In addition, Plaintiffs have confirmed in their Sur-Reply (Docket No. 98) to Defendant's Motion for Summary Judgment that they are not pursuing their previous claims for negligent supervision and related causes of action. *Id.* at 10, n.5. Therefore, Dr. Julian's proffered human resource opinions also are not relevant to any remaining issue in the case.

6.     The unique circumstances of Dr. Julian's diagnoses demonstrate that they are the product of confirmation bias, rather than sound clinical or scientific practice. *See* Defendant's Motion at 3-4, 8; Price Aff. at ¶¶ 4-7; Price Report at ¶ 7.

7.     Plaintiffs respond to Dr. Julian's failure to take a case history from any of the Plaintiffs with an argument that Dr. Julian conducted a "head history" (Response at 8). As pointed out by Dr. Price (Aff. at ¶ 9), there is no such thing as a "head history," and the taking of a clinical or case history is an essential part of a valid mental status examination (*id.* at ¶ 8). Further, Plaintiffs describe Dr. Julian's methodology as not "conduct[ing] a clinical history dating back to the Plaintiffs' birth" (Response at 9). In fact, Dr. Julian did not conduct any clinical history at all, for any Plaintiff, dating back to any period. This is not accepted practice in the science of clinical psychology. *See* Price Report at ¶ 3; Price Aff. at ¶¶ 8, 9, 11.

---

[7] Defendants' Motion to Exclude at 9. Plaintiffs' Response also does not discuss the apparent lack of "fit" between PTSD as defined in the DSM-IV and the stressors involved in employment discrimination cases. *See Shepard v. American Broadcasting Companies, Inc.*, 862 F. Supp. 486, 494 (D.D.C. 1994) (discussed in Defendant's Motion at 14, n.11); and *Neely v. Miller Brewing Company*, 246 F. Supp. 2d 866, 869, 871-72 (S.D. Ohio 2003).

8.      Contrary to Plaintiffs' assertions (Response at 8), Dr. Julian did not conduct a structured interview as that term is used in the science of clinical psychology. *See* Defendant's Motion at pp. 4, 6; Price Report at ¶¶ 2-3.

The above aspects of Dr. Julian's opinions, as well as others discussed in Defendant's Motion, reflect some of the many ways in which her work fell short of the standards and procedures prerequisite to a valid application of the principles of clinical psychology. The Fifth Circuit has emphasized that:

> Under *Daubert*, any step that renders the analysis unreliable renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.[8]

It is abundantly clear that Dr. Julian's proffer in this case suffers from a variety of methodological and substantive flaws, each of which constitutes a "step that renders the analysis unreliable." *Id. See also* Price Aff. at ¶ 22-23.

## D.      SUMMARY AND CONCLUSION

Plaintiffs' ultimate argument is that any problem with Dr. Julian's work "goes to the weight, rather than the admissibility of Dr. Julian's opinions." (Response at 9) While this cliché may be applicable to general evidentiary determinations, it is directly contrary to the Supreme Court's holding in *Daubert*. Rather, *Daubert* requires the trial court to assess "whether the reasoning or methodology underlying the [expert's] testimony is scientifically valid." *Moore* 151 F.3d at 276.[9] This is a lot to ask of district courts, but it is what the Supreme Court and the Fifth Circuit require.

---

[8] *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 278, n.10 (5th Cir. 1998) (en banc) (quotations and citations omitted).

[9] Indeed, the Supreme Court in *Daubert* noted that its gate keeping role for trial judges "inevitably on occasion will prevent the jury from learning of authentic insights," but that balance must be struck in the interest of the fair resolution of legal disputes. 509 U.S. at 597.

Dr. Julian's testimony, if admitted, would be misleading and prejudicial. "Post traumatic stress disorder" is a term loaded with emotional and moral context. This is likely true from the perspective of an intelligent lay person (*i.e.*, a juror), and it is certainly true when viewed through the prism of DSM-IV which specifically defines PTSD in terms of horrible occurrences such as rape or torture. Indeed, it is at least a fair inference that Dr. Julian selected the PTSD label in part to achieve this effect.

As the Court is well aware, if an expert's opinions do not pass muster under *Daubert*, they must be excluded even if that is dispositive of a party's case. In the current circumstances, granting Defendant's Motion will not be dispositive; however, such a ruling is required by applicable authorities and is clearly in the interest of a fair and balanced trial of this case.

Respectfully submitted,

OF COUNSEL:

Tony Rosenstein
State Bar No. 17279400
Fed. I.D. No. 01877

BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana
Houston, Texas 77002
Telephone: (713) 229-1234
Facsimile: (713) 229-1522

BAKER BOTTS L.L.P.

By: _____
    Teresa S. Valderrama
    State Bar No. 20422500
    Federal I.D. No. 10687
    One Shell Plaza
    910 Louisiana
    Houston, Texas 77002
    Telephone: (713) 229-1860
    Facsimile: (713) 229-1522

COUNSEL FOR SHIPLEY DONUT FLOUR & SUPPLY CO., INC.

## CERTIFICATE OF SERVICE ACCORDING TO ELECTRONIC FILING PROTOCOLS

I hereby certify that on the 17 day of October 2007, this instrument was filed pursuant to the electronic filing protocols applicable in the United States District Court for the Southern District of Texas, Houston Division, and that service therefore will be made in compliance with those protocols.

_____
Teresa Valderrama