# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| FILIBERTO ROBLES ALVARADO, | § | |
| *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2113 |
| | § | |
| SHIPLEY DONUT FLOUR & | § | |
| SUPPLY CO., INC., d/b/a SHIPLEY | § | |
| DO-NUTS, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Plaintiffs in this case, who all are Mexican immigrants, complain that Defendant subjected them to discrimination, physical assault, and financial exploitation, and that their complaints about Defendant's conduct were met with retaliation. Plaintiffs bring discrimination, retaliation, Fair Labor Standards Act, and assault and battery claims. Defendant has filed a Motion for Partial Summary Judgment [Doc. # 78] ("MPSJ") . Plaintiffs have responded [Doc. # 87], Defendant replied [Doc. # 91], and Plaintiffs surreplied [Doc. # 98]. Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court concludes that the Motion should be **granted in part and denied in part**.

## I.      FACTUAL BACKGROUND

Defendant Shipley Do-Nuts ("Defendant"), based in Houston, is a family-owned company that was started in 1936 by Lawrence Shipley, Sr. ("Shipley, Sr."). Defendant now sells donuts and other goods in retail stores and franchises in five states, and has numerous retail outlets in Houston.  In the late 1970s, management authority was passed from Shipley, Sr., to Lawrence W. "Bud" Shipley, Jr. ("Shipley, Jr."). When Shipley, Jr., died in March 2005, authority passed to Lawrence W. Shipley, III ("Shipley, III").

Plaintiffs, all immigrants from Mexico, were employed at Defendant's kitchen and warehouse, which prepares ingredients to be distributed to Defendant's individual stores.  Defendant's property, located at 5200 N. Main Street in Houston, includes the warehouse, two kitchens, storerooms, and offices.  The Main Street property is adjacent to Defendant's  "company houses"—several houses and mobile homes owned by Defendant in which some employees live rent-free.  Besides free housing, Defendant provided other benefits to some employees, such as paid medical care, paid automobile repairs, or emergency loans for which repayment was not sought.

For many years, until March 2005, Plaintiffs and the other warehouse workers were supervised by Jimmy Rivera, who is Mexican-American.  Administrative duties in the warehouse, and some supervisory duties, were performed by Julian Garcia

(Mexican-American), Christopher Halsey (Caucasian), and Bill Shipley[1] (Caucasian). In March 2005, Rivera was removed from the warehouse in response to Plaintiffs' initial complaints, and Garcia became warehouse manager, with Halsey assisting him.

Neither Shipley Jr. nor Shipley, III, speak Spanish.  Most of Defendant's warehouse workers do not speak English.  Because Rivera and Garcia are bilingual, the Shipley family relied upon them to provide information about what happened in the warehouse. Plaintiffs claim that they had no access to the Shipley family, and no means of registering complaints about warehouse conduct, except through Rivera.

Plaintiffs allege that, throughout their employment with Defendant, they were subjected to verbal and physical harassment based on their race and national origin. In particular, Plaintiffs claim that they were subjected daily to derogatory slurs from Rivera, Garcia, Halsey, and Bill Shipley.  The slurs included "fucking wetback," "fucking Mexican," pendejo, vaqueton, mojado, Chiapaneco, cabron, vato, stupid, jackass, lazy, and taco-eater.  Plaintiffs further allege that they were subjected to frequent, offensive touching of their buttocks and other private parts.  This physical harassment was inflicted mostly by Rivera, but also, to a lesser extent, by Garcia and Halsey.  Plaintiffs also claim that Rivera kept sex toys in his office, forced Plaintiffs to retrieve or clean the sex toys, made offensive sexual comments to them, and

---

[1]     Bill Shipley is the nephew of Shipley, Jr., and cousin of Shipley, III.

demanded they give him massages.

Second, Plaintiffs allege extensive financial exploitation by Rivera and, to a lesser extent, Garcia.  In particular, Plaintiffs allege that Rivera exploited his broad authority over the warehouse by demanding payments for employment "favors" such as hiring, pay raises, overtime pay, and sick leave.  Sometimes the demanded payments were in the form of "raffle tickets" that Plaintiffs were forced to buy.  They also allege that Rivera sometimes pocketed their paychecks.

Third, Plaintiffs allege an assault and battery claim, contending that Rivera and others hit them and pushed them on multiple occasions.  They further claim that some of the offensive sexual touching was extremely painful—in particular, the supervisors frequently grabbed and squeezed their penises, nipples, and buttocks.

Finally, Plaintiffs allege that, when they complained to Defendant, and later to the Equal Employment Opportunity Commission ("EEOC"), Defendant retaliated against them by actions such as reprimanding them without proper basis, following them on delivery routes and outside of work, threatening them with deportation, and reassigning them to less desirable work duties.

On June 30, 2005, based on its investigation, the EEOC issued Determinations for Plaintiffs and other employees of Defendant who had filed charges of

discrimination.[2]  The Determinations concluded that Defendant discriminated against

Plaintiffs in violation of Title VII.[3]

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who

fails to make a sufficient showing of the existence of an element essential to the

party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th

Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v.*

*ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for

summary judgment, the Court must determine whether "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with any affidavits filed

in support of the motion, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P.

---

[2]    EEOC Determination for Pedro Paz Estada (Exhibit 14 to Response); EEOC Determinations
       for all other Plaintiffs except José Maldonado (Exhibit 2 to Response).

[3]    The EEOC brought suit on a Title VII retaliation claim for one Plaintiff, Gerardo Guzman.
       *EEOC v. Shipley Donut Flour & Supply Co., Inc., d/b/a Shipley Do-Nuts*, No. H-06-2106
       (S.D. Tex. 2007) (Ellison, J.).  On September 24, 2007, Judge Ellison signed a Consent
       Decree which, among other things, permanently enjoins Defendant from discriminating or
       retaliating against any individual and from employing Rivera in a supervisory position;
       orders Defendant to pay $6,500 to Guzman in settlement of his claims; and requires
       Defendant to amend or implement policies and procedures for housing eviction, employee
       complaints, employee discipline, and prohibition of discrimination and retaliation.  Consent
       Decree (Exhibit A to Surreply).

56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F.

Supp. 2d 733, 745 (S.D. Tex. 2003).   A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.  *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *See id.* (internal citations and quotations omitted).

## III.   <u>ANALYSIS</u>

Plaintiffs bring claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981; violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; and assault and battery under Texas law.[4]

---

[4]   Plaintiffs have abandoned their claims for negligence; negligent hiring, supervision, retention, and training; gross negligence; and intentional infliction of emotional distress. Surreply, at 10 n.5.

A.       **Title VII and § 1981 Claims**

Plaintiffs allege that Defendant discriminated against them on the basis of their race and national origin; specifically, they bring claims for hostile work environment and retaliation under Title VII and § 1981.  Employers are prohibited under Title VII from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Section 1981 ensures that all persons have the same right to make and enforce contracts, including the making, performance, modification, and termination of employment contracts.  42 U.S.C. § 1981; *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048, 1050-52 (5th Cir. 1998) (recognizing § 1981 claim by at-will employee of private employer). The summary judgment test for assessing discrimination claims is the same under Title VII and § 1981.  *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004).  Because § 1981 claims are evaluated under the same evidentiary standards as Title VII claims, the Court combines some of its discussion of these claims.

1.       **Separating Allegations of Race Discrimination from Allegations of National Origin Discrimination**

As a preliminary matter, Defendant's motion argues strenuously that the slurs complained of by Plaintiffs are either racially-neutral or are specific to Mexicans, and

therefore that they cannot support a claim of racial discrimination (as opposed to national origin discrimination).  This argument has different ramifications under § 1981 and Title VII.

### a.      National Origin Claims Under § 1981

Plaintiffs' § 1981 claims for national origin discrimination are not cognizable. The Supreme Court has held that § 1981 protects against race-based discrimination, but not discrimination based "solely on the place or nation of . . . origin." *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987).  *See Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006) ("Section 1981 applies to allegations of discrimination based on race but not national origin").

On the other hand, the *St. Francis* Court also made clear that, under § 1981, "race" is broadly defined:

> Based on the history of § 1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.  Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory.

*St. Francis*, 481 U.S. at 613.  The Court held that "Arab" was a protected race under § 1981, relying on the statute's legislative history from the 19th century, which reflects lawmakers' references to "the Scandinavian races, as well as the Chinese, Latin, Spanish, and Anglo-Saxon races, Jews, *Mexicans*, blacks, and Mongolians,"

as well as Gypsies and Germans.  *Id*. at 612 (internal citations omitted) (emphasis added).

Therefore, although Plaintiffs' national origin claim fails under § 1981, their factual allegations are cognizable under § 1981 as a claim of race-based discrimination.

### b.    Allegations of Race and National Origin Discrimination under Title VII

Defendant urges the Court to dismiss all of Plaintiffs' race discrimination claims as unsupported by the evidence.  Defendant argues that "[t]here is no testimony or other evidence that any Shipley employee used derogatory racial/Hispanic slurs, as opposed to Mexican slurs, or otherwise engaged in discriminatory or harassing race-based conduct."[5]  In other words, Defendant argues that the alleged slurs derogated Mexicans, not Hispanics generally, and clearly fit in the category of national origin discrimination rather than race. Plaintiffs' Response does not separate race and national origin.[6]  Although some of the alleged slurs are specific to Mexicans (*e.g.*, "fucking Mexican," Chiapaneco), others are not (*e.g.*, wetback, mojado, stupid, lazy, jackass, pendejo, taco-eater, vaqueton, cabron, vato).

The Court holds that the basis for the alleged discrimination involves fact

---

[5]    MPSJ, at 47.

[6]    *See* Response, at 62.

questions that cannot be resolved at the summary judgment stage. Defendant's summary judgment argument is rejected.

Defendant also argues that some of the alleged slurs, such as mojado and wetback, actually refer to a person's immigration status, rather than race or national origin.[7] The Court is unpersuaded. The meaning of these terms is a factual matter; these terms arguably encompass national origin, since they are typically directed at Mexicans. Moreover, these slurs are not the only ones that were commonly used. To the extent that this case may raise other issues regarding the intersection between Plaintiffs' national origin and their immigration status, the parties have not briefed the issues or their implications under § 1981 or Title VII, and the Court does not reach them.

### 2.  Hostile Work Environment Claims[8]

For the reasons stated below, the Court holds that the statute of limitations and exhaustion requirements do not bar Plaintiffs' hostile work environment claims, and that fact questions exist on those claims.

### a.  Hostile Work Environment Claims—Statute of Limitations.

---

[7]  MPSJ, at 47 n.20.

[8]  Defendant seeks summary judgment on the Title VII claims of hostile work environment based on national origin brought by eight of the twelve Plaintiffs, but not as to Miguel Paz, Gerardo Guzman, Oscar Espinosa, Feliciano Gil. MPSJ, at 3.

*Title VII.*— Defendant urges the Court to bar Plaintiffs from recovering on their hostile work environment claims for any conduct that allegedly occurred more than 300 days before Plaintiffs filed charges with the EEOC.[9]   In particular, Defendant asserts that Pedro Paz cannot recover for conduct by Defendant occurring before March 19, 2004, because he filed his EEOC charge on January 13, 2005. Similarly, Defendant urges that José Angel Maldonado, who filed with the EEOC on October 3, 2005, cannot recover for conduct prior to December 7, 2004. Defendant claims that the remaining ten Plaintiffs, who filed EEOC charges on March 3, 2005, cannot recover for conduct before May 7, 2004.

Defendant is correct that, as a prerequisite to a Title VII claim, a person claiming unlawful discrimination must file a charge of discrimination with the EEOC within 300 days "after the alleged unlawful employment practice occurred." *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 398 (5th Cir. 2007); *Griffin v. City of Dallas*, 26 F.3d 610 (5th Cir. 1994).  However, Plaintiffs have brought a claim for hostile work environment, and the Supreme Court has clearly stated that for such claims only one component act of the hostile environment need be within the filing period:

> A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1).  The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days

---

[9]     MPSJ, at 43.

after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).[10]   *See WC&M Enters.*, 496 F.3d at 398.

Because Plaintiffs claim that Defendant discriminated against them on a daily basis, they have alleged component acts of their claims occurring within Plaintiff's 300-day filing period, and their hostile work environment Title VII claims are not time barred.

**Section 1981.**— Plaintiffs' § 1981 hostile environment claims similarly are timely.  Plaintiffs filed this suit on June 22, 2006.  They have alleged component acts of the hostile work environment that occurred within the applicable limitations period of two years.  *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279-80 (5th Cir. 2004) (*Morgan*'s continuing violations doctrine also applies to § 1981 claims which, in Texas, have a two-year limitations period); TEX. CIV. PRAC. & REM. CODE § 16.003 (Vernon 2002) (two-year limitations period).

---

[10]   *Cf. Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162 (2007) (in Title VII disparate treatment case in which plaintiff alleged discriminatory pay, only a discriminatory pay decision, and not issuance of paychecks based on earlier discriminatory pay decisions, could trigger time limit for filing EEOC charge).

b.     **Exhaustion of Administrative Remedies for Title VII Claims of Race Discrimination.**

Defendant argues that Plaintiffs' race discrimination claims under Title VII were not exhausted, and should be dismissed for lack of subject matter jurisdiction, because Plaintiffs' EEOC charges allege and support only national origin discrimination, as opposed to race discrimination. Defendant relies on the fact that, "although the national origin discrimination boxes are checked on all [EEOC] charges, the race discrimination boxes are not checked on any of them."[11]  The Fifth Circuit has held:

> To be clear, we do not require that a Title-VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency.  Nor do we require, for purposes of exhaustion, that a plaintiff allege a prima face case before the EEOC. Instead, the plaintiff's administrative charge will be read somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger.

*Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir.), *cert. denied*, 127 S. Ct. 299 (2006) (internal citations and footnote omitted) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970) ("In the context of Title VII, no one—not even the unschooled—should be boxed out")).

The Court is mindful that, because a primary purpose of Title VII is to "trigger the investigatory and conciliatory procedures of the EEOC," the proper scope of

---

[11]     MPSJ, at 45.

Plaintiffs' Title VII claims is determined "by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* at 789 (quoting *Sanchez*, 431 F.2d at 466).  In this case, facts relevant to Plaintiffs' race discrimination claims were considered and investigated by the EEOC.[12]

The Court holds that claims of race-based discrimination could "reasonably be expected to grow" out of Plaintiffs' EEOC charges, and that Plaintiffs sufficiently exhausted their administrative remedies.

### c.   Legal Standard for Title VII and § 1981 Hostile Work Environment Claims.

When, as in this case, the alleged harasser is Plaintiffs' supervisor, the elements for a race- or national origin-based Title VII hostile work environment claim are: (1) Plaintiffs are in a protected group based on their race or national origin, (2) Plaintiffs were subjected to unwelcome harassment, (3) the harassment was based upon race or national origin, and (4) the harassment affected a term, condition, or privilege of employment.  *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 434-35 (5th Cir. 2005); *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999); *see Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 204-05 (5th Cir. 2007).  The

---

[12]    *See* Plaintiffs' EEOC Charges (Exhibits 1-12 to MPSJ).  Plaintiffs' charges reflect that they complained to the EEOC about derogatory slurs and other harassment motivated by them being Mexican, and the facts they rely on to support their claims of race discrimination are the same as those relied upon to support their national origin discrimination claims.

same standards apply to a hostile work environment claim under § 1981.  *See Jones v. Donnelly & Sons Co.*, 541 U.S. 369, 383 (2004) (after amendments by 1991 Civil Rights Act, hostile work environment claims are actionable under § 1981); *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 468 n.11 (5th Cir.), *cert. denied*, 534 U.S. 948 (2001) (after the 1991 Civil Rights Act, both Title VII and § 1981 apply to terms and conditions of employment); *Harrington v. Disney Reg'l Entm't, Inc.*, 2007 WL 3036873, at *11 (11th Cir. Oct. 19, 2007) (applying Title VII elements to 1981 hostile work environment claim); *Tucker v. Merck & Co.*, 131 F. App'x 852, 858 (3d Cir. 2005) (same); *see LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996) (employment discrimination claims under Title VII and § 1981 are governed by the same standards).

When considering a hostile environment claim, courts consider "the totality of the circumstances including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Harvill*, 433 F.3d at 434 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  "'To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so.'" *Id.* (quoting *Shepherd v. Comptroller*

*of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir.), *cert. denied*, 528 U.S. 963 (1999)).

When entertaining a motion for summary judgment, a court "should review all evidence in the record." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000). The court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.* "The ultimate determination, in every case, is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable fact finder could infer discrimination." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (citing *Reeves*, 530 U.S. at 142); *see Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (plaintiff "bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against her because of her protected status").

Defendant argues that Plaintiffs have not raised a genuine issue of material fact on the third and fourth elements of their hostile work environment claim. For the reasons that follow, the Court finds there are genuine issues of material fact and denies summary judgment.

***Motivation (Third Prong).—*** Plaintiffs have demonstrated fact questions regarding whether Defendant's alleged harassment was motivated by their race or

national origin.[13]

Defendant argues that the majority of the alleged harassment was financial in nature, and thus unrelated to either race or national origin and irrelevant to Plaintiffs' discrimination claims.[14]  In particular, Defendant asserts that the alleged bribes and kickbacks were not tied to Plaintiffs' race or national origin.  Defendant contrasts the testimony of a Nicaraguan employee stating he paid bribes to Rivera with some Mexican employees who stated that they did not make such payments.[15]  Defendant also asserts that Plaintiffs have not presented evidence that the alleged offensive touching was motivated by race or national origin, or that only Mexicans, or all Mexicans, were subjected to the touching.[16]  Finally, Defendant argues that many of the alleged slurs—such as lazy, stupid, pendejo, or vaqueton—are unrelated to race

---

[13]    Plaintiffs' claims are not defeated simply because two of the alleged harassers, Rivera and Garcia, are Mexican-American. *Castaneda v. Partida*, 430 U.S. 482, 499 (1977) ("Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of the group"); *Hill v. Miss. State Employment Serv.*, 918 F.2d 1233, 1240-41 (5th Cir. 1990), *cert. denied*, 502 U.S. 864 (1991) (rejecting fallacy that "blacks never discriminate against other blacks").

[14]    MPSJ, at 48-49 ("[m]ost of the conduct complained of by Plaintiffs—Rivera's soliciting and accepting of bribes, the offensive and sexual physical contact allegations, and much of the name-calling—even if it occurred as alleged, has nothing whatsoever to do with Plaintiffs' race or national origin").

[15]    *Id.* at 51.

[16]    *Id*. at 53.

or national origin.[17]   Defendant urges the Court to consider *only* the slurs directly related to race or national origin when weighing Plaintiffs' discrimination claims, and not any of the other alleged harassment.

Defendant's contentions are unpersuasive; they are contrary to longstanding and prevailing appellate authority.   There is a serious fact question regarding the motivation for the alleged harassing conduct, such as financial exploitation, offensive touching, and generic name-calling.   The jury must determine whether some or all of this alleged conduct was motivated by race or national origin, as these terms are construed for § 1981 and Title VII purposes.   Plaintiffs present ample evidence that they were subjected to racial and ethnic slurs on a daily basis, and have raised a "reasonable inference" that the other alleged harassment was motivated by discriminatory animus.   *See Reeves*, 530 U.S. at 150-51 (on summary judgment "the court must draw all reasonable inferences in favor of the nonmoving party").   The Fifth Circuit has held that discriminatory comments can be sufficient to defeat summary judgment, even in cases when the comments are "not in the direct context of the [adverse action]."   *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 315 (5th Cir. 2004) (internal citations and quotation marks omitted).   A trial is often necessary to assess the alleged discriminatory motivation:

---

[17]     *Id*. at 53-54.

> Unlike the district court, we are unwilling to assume that indirect comments about [the plaintiff's] age and adaptability are not possibly probative of an unlawful discriminatory intent, given the parties' sharp disagreements over the operative facts of [plaintiff]'s performance. Moreover, live testimony will assist the necessary credibility choices in this case more effectively than printed affidavits.

*Id*. at 315 (quoting *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507 (5th Cir. 1988), in which the Fifth Circuit reversed the district court's grant of summary judgment); *see Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000) (jury is in best position to evaluate contested evidence regarding employer's motivation).

Other courts faced with similar facts have held that summary judgment is inappropriate, and have refused to exclude evidence that arguably is unrelated to a plaintiff's protected status.   In a recent Fifth Circuit case, the plaintiff, a practicing Muslim born in India, brought a claim for hostile work environment based on his national origin and religion.  *EEOC v. WC&M Enters., Inc.*, 496 F.3d 393 (5th Cir. 2007).  He presented evidence of frequent slurs and derogatory comments, as well as of harassment that was not directly related to his protected status—in particular, a manager banging on the plaintiff's office partition to startle him.  *Id*. at 396-97.  The district court, in granting summary judgment for the employer, held that the wall-banging incident could not be considered harassment based on religion or national origin.  The Fifth Circuit reversed, stating:

> Here, although [the alleged harasser] did not specifically refer to [plaintiff]'s religion or national origin during the incident, considering the context of [the alleged harasser]'s pattern of harassment based explicitly on religion and national origin, coupled with his practice of banging on the glass partition to allegedly startle [plaintiff], a factfinder could easily infer that [the wall-banging incidents] were also taken on account of [plaintiff]'s religion and national origin.

*Id*. at 398-99 (citing *Oncale v. Sundowner Offshore Servs. Inc*., 523 U.S. 75, 81-82 (1998) ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.")).[18] Summary judgment as to motivation is denied.

   ***Severity or Pervasiveness (Fourth Prong).***— The fourth element of a hostile work environment claims—a showing that the harassment affected a term, condition, or privilege of employment—is satisfied if Plaintiff shows that the harassment was "severe or pervasive." *WC&M Enter.*, 496 F.3d at 399.  A Title VII plaintiff must establish that the alleged harassment was either severe *or* pervasive, but need not

---

[18]   Similarly, in *Marroquin v. City of Pasadena*, No. 06-1543, 2007 WL 2220990 (S.D. Tex. Aug. 2, 2007) (Smith, M.J.), the court denied summary judgment on a hostile work environment claim with facts that are strikingly similar to those in the case at bar.  The *Marroquin* plaintiff, who alleged national origin discrimination, complained of frequent derogatory slurs such as "fucking Mexican," wetback, and perro (Spanish for "dog"), and further alleged that his supervisor "grabbed or hit him in the crotch." *Id*. at *1.  The court held that the supervisor's "corroborated propensity for ethnic slurs (including at least one instance of crotch-grabbing accompanied by such a slur) is sufficient to warrant an inference that the abuse directed towards Marroquin was based on his national origin." *Id*. at *3.

prove it was both.  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Harvill*, 433 F.3d at 434-35 ("the requirement that a plaintiff establish that reported abusive conduct be both severe *and* pervasive in order to be actionable imposes a more stringent burden on the plaintiff than required by law") (emphasis original).  Of course, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms or conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations and quotation marks omitted).

Defendant's argument regarding severity or pervasiveness relies upon the argument that the majority of the alleged harassment should be disregarded because it was not motivated by race or national origin.[19]  Because the Court has rejected this argument above, and considers all of the alleged harassment to be relevant to Plaintiffs' discrimination claims, the evidence regarding both the severity and pervasiveness of the alleged harassment is more than sufficient to survive summary judgment.  On the issue of severity, Plaintiffs' allegations of physical assault and sexual touching create a fact issue that precludes summary judgment.[20]   As to

---

[19]     MPSJ, at 55.

[20]     *See Richardson v. N.Y. State Dept. of Correctional Serv.*, 180 F.3d 426, 437 (2d Cir. 1999) (holding, in race harassment case, that "even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive working environment") (internal quotation marks and citations omitted); *Marroquin v. City of* (continued...)

pervasiveness, Plaintiff has produced ample evidence that slurs and other offensive

conduct by Rivera and others occurred several times per week,[21] which suffices to

survive summary judgment.[22]

Defendant also argues that the alleged harassment cannot establish a hostile

work environment claim because it is attributable to "a blue-collar, all-male, mostly

Hispanic and Mexican, rough-and-tumble workplace in which name-calling, teasing

and horseplay was common."[23]   Defendant cites to cases rejecting hostile work

---

[20]   (...continued)
       *Pasadena*, No. 06-1543, 2007 WL 2220990, at *3  (S.D. Tex. Aug. 2, 2007) (Smith, M.J.)
       (in hostile work environment case based on national origin, court finds fact issue on severity
       because plaintiff alleged "genital-grabbing" that "was both painful and intrusive"). *Cf.*
       *Harvill*, 433 F.3d at 436 (in sexual harassment case, court considered the fourth prong's
       "severe or pervasive" requirement and held, "Undoubtedly, the deliberate and unwanted
       touching of Harvill's intimate body parts can constitute severe sexual harassment").

[21]   *See e.g.*, Pedro Paz Deposition (Exhibit 32 to MPSJ), at 41-44 (Rivera used slurs against him
       multiple times every day, demanded massages frequently); Isaac Peña Ramirez Deposition
       (Exhibit 33 to MPSJ), at 42-43 (Rivera grabbed or slapped his bottom sometimes two or
       three times a day); Miguel Paz Deposition (Exhibit 31 to MPSJ), at 24, 72 (Garcia and
       Rivera used slurs against him almost every time they talked to him); Joel Sixtos Deposition
       (Exhibit 39 to MPSJ), at 50-56 (Rivera, Garcia, and Halsey all used slurs against him several
       times a week or daily; Rivera touched him offensively about four times per week).

[22]   *See WC&M Enters.*, 496 F.3d at 400 ("this court has found that a regular pattern of frequent
       verbal ridicule or insults sustained over time can constitute severe or pervasive harassment
       sufficient to violate Title VII") (citing *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir.
       2000); *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996)).

[23]   MPSJ, at 57.  Plaintiffs have presented evidence that they were not willing participants in
       mutual horseplay. *See, e.g.*, Gonzales Affidavit (Exhibit 1 to Response), ¶¶ 3, 8 (Rivera used
       slurs against workers frequently, poked sex toys at them, and hit them; "These guys were not
       willing participants in any of Jimmy [Rivera]'s antics; they were afraid of him."); José
       Maldonado Deposition (Exhibit 30 to MPSJ), at 61-63 (Rivera grabbed his buttocks and
       those of other workers; Maldonado never saw anyone else, other than Chris Halsey, grab
       (continued...)

environment claims despite significant allegations of harassment, such as *Vaughn v. Pool Offshore Co.*, 683 F.2d 922 (5th Cir. 1982).  The cited cases are not dispositive. In *Vaughn*, the plaintiff alleged that co-workers used racial epithets and that he was subjected to harassment such as being stripped and having his genitals coated with grease, being doused with ammonia or cold water while showering, and having hot coffee poured down his back.  *Id.* at 923-24.  The Fifth Circuit agreed with the district court that the environment was coarse and generally abusive.  But, the appellate court explained there was no indication of race-based motivation, noting that employees of all races were subjected to the same treatment.  *Id.* at 924-25.  The court also relied upon the plaintiff's *own* perception that the acts directed at him were *not* racially motivated and that he was *not* singled out for abuse because of race or any other class basis.  *Id.*; *see Harvill*, 433 F.3d at 434 (the challenged conduct must be both objectively and subjectively offensive).  The evidence in *Vaughn*, including the plaintiff's own perceptions, is materially different from that at bar, and *Vaughn* is not persuasive authority for dismissal of Plaintiffs' claims.

Other Fifth Circuit cases are more relevant because they address fact patterns similar to those Plaintiffs present, and hold that such facts can establish severe or

---

23      (...continued)
anyone's buttocks); Alvarado Deposition (Exhibit 13 to MPSJ), at 60-61 (Rivera touched his buttocks on four or five occasions; his co-workers never did).

pervasive harassment. *See WC&M Enters.*, 496 F.3d at 400-01 (regular verbal harassment, accompanied by sporadic additional incidents of harassment, can establish severe or pervasive harassment); *Walker*, 214 F.3d at 626 (reversing summary judgment for defense; alleged racial slurs, occurring over a three-year period, raised a fact question as to severe or pervasive harassment); *Farpella-Crosby*, 97 F.3d at 806 (affirming judgment for plaintiff in sexual harassment case; evidence was sufficient for jury to find severe and pervasive harassment when harasser frequently inquired about plaintiff's sexual activity and made offensive comments to plaintiff "two or three times a week").

Finally, Defendant asserts that most Plaintiffs never asked their supervisors to stop the offending behavior, and that Plaintiffs never reported the behavior to Shipley, Jr., or Shipley, III.[24]  Plaintiffs have demonstrated a fact question on this issue by presenting evidence that Plaintiffs were unable to get direct access to Shipley, Jr., and Shipley, III, because of language barriers and because they were prevented from entering the Shipleys' offices.[25]  In any event, the issue of Plaintiffs'

---

[24]     MPSJ, at 60.

[25]     *See, e.g.*, Guzman EEOC Deposition (Exhibit 24 to MPSJ), at 60 (Guzman never dealt with Shipley, Jr. and only saw him on "two or three occasions"; "Everything was through Jimmy [Rivera]"); E. Garcia Deposition (Exhibit 19 to MPSJ), at 75-77 (non-plaintiff Garcia, unlike the other workers, had access to Shipley, Jr., because had a job that put him in contact with Shipley, Jr.,and because he spoke English; the other workers could not talk with Shipley, Jr. without going through Rivera); José Maldonado Deposition (Exhibit 30 to MPSJ), at 63-64
(continued...)

failure to complain is not relevant to the elements of the hostile work environment claim, but rather to the *Ellerth/Faragher* defense to vicarious liablity.  *See Ackel v. Nat'l Communications, Inc.*, 339 F.3d 376, 383-84 (5th Cir. 2003) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)).  Under *Ellerth/Faragher*, an employer may avoid liability for its employees' actions by showing that "(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  *Ellerth*, 524 U.S. at 765; *Ackel*, 339 F.3d at 384.  However, the *Ellerth/Faragher* defense is not available in all cases.  A defendant may not assert the defense in two situations when vicarious liability *automatically* applies: (1) when the harassing supervisor is "indisputably within that class of an employer organization's officials who may be treated as the organization's proxy," or (2) "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment."  *Ackel*, 339 F.3d at 383-84 (internal citations and quotation marks omitted).  The parties have not briefed, and the Court does not decide

---

25      (...continued)
        (Maldonado never complained to the any member of the Shipley family "[b]ecause there was
        no access to anyone in the company.  The door would be locked").

at this stage, whether Defendant is entitled to invoke the defense.

The facts alleged in this case regarding severity and pervasiveness are sufficient to raise a fact question precluding summary judgment.

### 3.     Retaliation

Plaintiffs allege that Defendant retaliated against them because they engaged in protected activity by complaining about Defendant's behavior and filing a charge of discrimination with the EEOC.[26]  To establish a *prima facie* case for retaliation under Title VII, a plaintiff must present evidence that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and adverse employment action.  *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).  The elements of a retaliation claim under § 1981 are identical to the Title VII elements.  *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).

The first element of a *prima facie* case of unlawful retaliation requires the plaintiff to show that he or she engaged in activity protected by Title VII (and

---

[26]     Defendant argues, as part of its motion on Plaintiffs' retaliation claims, that Plaintiffs cannot satisfy the standard for a claim of constructive discharge.  MPSJ, at 97-104; *see Harvill*, 433 F.3d at 439-40 (constructive discharge is one type of adverse employment action that can serve as the basis for a retaliation claim).  Plaintiffs' briefing does not argue that constructive discharge was one of the adverse employment actions suffered by Plaintiffs.  *See* Response, at 70 (list of nine alleged retaliatory actions—such as threats of deportation, unjust reassignments, and termination—does not include constructive discharge).  The issue of constructive discharge therefore is not before the Court.

§ 1981).   An employee engages in protected activity by either (1) opposing any unlawful employment practice under Title VII; or (2) filing a charge of discrimination or otherwise participating in any manner in a Title VII matter.  *See Baker v. American Airlines, Inc.*, 430 F.3d 750, 755 (5th Cir. 2005).

Second, each plaintiff must present evidence that he or she suffered an adverse employment action.   In the retaliation context, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).  This requires a showing that the challenged conduct "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."   *McCoy*, 492 F.3d at 559 (internal quotations and citation omitted).

The third element of each Plaintiff's *prima facie* case of retaliation is the existence of a causal link between the protected activity and the adverse employment action.  The burden of establishing this "causal link" element of a *prima facie* case is much less onerous than the standard for proving "but for" causation required for the determination of the ultimate issue of retaliation.  *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998).   In evaluating the "causal link" element, the Fifth Circuit focuses on three factors: (1) the employee's past

disciplinary record; (2) whether the employer followed its typical policies and procedures in dismissing the employee; and (3) the temporal relationship between the protected action and the termination. *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994); *see Bacon v. EDS*, 219 F. App'x 355, 357 (5th Cir. 2007).

If Plaintiffs successfully establish a *prima facie* case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the allegedly retaliatory conduct, and then back to Plaintiff to present evidence that raises a genuine issue of material fact that the proffered reasons are pretextual. *See Baker*, 430 F.3d at 754-55. At this point, Plaintiff is required to show that he would not have suffered the adverse employment action "but for" the protected activity. *See Strong v. Univ. Health Care Sys.,* 482 F. 3d 802, 806 (5th Cir. 2007). A factfinder may infer the ultimate fact of retaliation if they find that Defendant's "proffered explanation is false or 'unworthy of credence.'" *Staten v. New Palace Casino, LLC*, 187 F. App'x. 350, 358 (5th Cir. 2006) (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). "No further evidence of discriminatory animus is required because once the employer's justification has been eliminated, discrimination [or retaliation] may well be the most likely alternative explanation." *Id.* (quoting *Reeves*, 530 U.S. at 147).

The Supreme Court has held that allegations of retaliation must be evaluated in context, and that whether certain actions (such reassignment or suspension) are

retaliatory is often a fact question for the jury. *Burlington*, 126 S. Ct. 2405.

Defendant argues that two Plaintiffs, José Maldonado and Isaac Peña Ramirez, have failed to identify any admissible record evidence supporting their retaliation claims.[27]  For the reasons stated below, summary judgment is denied as to Maldonado and granted as to Peña Ramirez.  The remaining Plaintiffs have presented sufficient evidence to proceed to trial on their claims.

### a.    José Maldonado

Plaintiffs' Response claims that Maldonado was subject to retaliation in the form of threats of deportation, threats of physical bodily harm, meritless disciplinary action, undesirable work assignments, pressure from Defendant to recount events falsely, and pressure from Defendant not to speak to the EEOC.[28]  However, in support of these broad allegations, Plaintiffs cite only to the following: (1) a letter from Plaintiffs' counsel to Defendant's counsel, dated August 29, 2006, which alleges ongoing harassment and retaliation but discusses all Plaintiffs generally, and makes no allegations specific to Maldonado or any other Plaintiff;[29] and (2) Maldonado's counsel's response to Defendant's interrogatory regarding retaliation, which refers Defendant to Maldonado's EEOC Charge and deposition, and then states that

---

[27]      Reply, at 13.

[28]      Response, at 17.

[29]      Letter from Katrina Patrick, dated August 29, 2006 (Exhibit 8 to Response).

Plaintiffs generally (and not Maldonado specifically) were subjected to ten types of retaliation, including physical threats and undesirable work assignments.[30]  The letter and unsworn interrogatory answer are merely allegations and conclusory statements, not admissible evidence, and do not defeat summary judgment.  *Diamond Offshore Co.*, 302 F.3d at 545 n.13; *Morris,* 144 F.3d at 380.

Plaintiffs' Response also alleges that Rivera pulled a gun on Maldonado and told him "this is what happens to people who talk."[31]   In support, Plaintiffs cite only to the report of their expert, Dr. Shari Julian, who recounts the alleged threat but does not specify when it was made or give any context for it.[32]   Maldonado does not address this matter in his deposition.[33]  Defendant objects to Plaintiffs' reliance on the expert report on hearsay grounds.[34]  The Court agrees that Dr. Julian's testimony on these points is hearsay at best, and is not admissible evidence for the truth of the matter asserted, *i.e.*, that the threat actually occurred.  FED. R. EVID. 801, 802.

---

[30]     Plaintiff José Angel Maldonado's First Amended Responses and Objections to Defendant's Second Set of Interrogatories (Exhibit 53 to MPSJ), Response No. 3.  Maldonado did not sign his interrogatory responses; they are signed instead by his counsel.

[31]     Response, at 17.

[32]     Dr. Julian's Expert Report (Exhibit 4 to Response), at 10.

[33]     Maldonado Deposition (Exhibit 30 to MPSJ).

[34]     *See* Reply at 4.  Defendant has filed a separate motion to exclude Dr. Julian's testimony. Defendant's Motion to Exclude Expert Testimony of Dr. Julian [Doc. # 92] (arguing that Dr. Julian's proffered testimony should be stricken under *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993)).   The Court will address this motion in a separate ruling.

In the record, however, is Maldonado's EEOC Charge, which is "sworn to," and makes the following allegation: "Mr. Rivera threatened me with a gun and said, 'if you talk about what is going on, you will know who I am.'"[35]  Because the Supreme Court has defined an adverse employment action as "any action that 'might well have dissuaded a reasonable worker from *making* or supporting a charge of discrimination,'" *McCoy*, 492 F.3d at 559 (quoting *Burlington*, 126 S. Ct. at 2415) (emphasis added), this allegation of threatened retaliation suffices to defeat summary judgment.   Although the EEOC charge alone would not support a jury verdict in Maldonado's favor, the Court concludes that there is a sufficient fact issue about Maldonado's actions and the context and intent of Rivera's statement to warrant a trial.[36]  It is not appropriate to dismiss Maldonado's retaliation claim until the Court has a more complete record.

### b.   Isaac Peña Ramirez

Plaintiffs' briefing regarding Peña Ramirez—in contrast to the briefing on each

---

[35]    Maldonado EEOC Charge (Exhibit 12 to MPSJ).

[36]    Defendant also argues that Maldonado's retaliation claim must be dismissed because he failed to exhaust his administrative remedies.  MPSJ, at 86 n.40.  The retaliation box on Maldonado's EEOC Charge is not checked.  However, because the Charge's narrative alleges Rivera's threat, described above, a retaliation claim could "reasonably be expected to grow" out of the Charge.  *See Pacheco*, 448 F.3d at 788-89. The Court must construe the EEOC Charge broadly and, from the Charge's narrative, it appears that the EEOC was on notice to investigate retaliation as well as discrimination.  *See id.* at 792.

of the other Plaintiffs—does not contain a section alleging retaliation.[37]  Peña Ramirez's EEOC Charge checks the retaliation box and recites, in language identical to many other Plaintiff's EEOC Charges, that he was aware that a co-worker was discharged after complaining about Rivera, and that Rivera stated that he would fire anyone who told EEOC investigators the truth about what was happening in the warehouse.[38]

This conclusory allegation in Peña Ramirez's EEOC Charge is insufficient to defeat summary judgment. *Diamond Offshore Co.*, 302 F.3d at 545 n.13; *Morris,* 144 F.3d at 380.  The allegation is unsupported by any other competent evidence in the summary judgment record.  The Court notes that Peña Ramirez's deposition makes no allegations of retaliation.[39]

Summary judgment is granted on Peña Ramirez's claims of retaliation under Title VII and § 1981.

### c.    Other Plaintiffs

The remaining Plaintiffs have demonstrated fact issues sufficient to survive

---

[37]     Response, at 18-19.

[38]     Peña Ramirez EEOC Charge (Exhibit 8 to MPSJ).

[39]     Peña Ramirez Deposition (Exhibit 33 to MPSJ).  Peña Ramirez does testify that Rivera threatened to report him to "his friends," deport him, or fire him.  *Id*. at 50-51.  However, he further testified that he did not know why Rivera made those comments to him, and that they were not in the context of any dispute with Rivera.  *Id*. at 51-55.  His testimony is vague about the time of the alleged threats.  *Id*.

summary judgment on their retaliation claims.  Each has alleged at least one instance of retaliation after complaints to Defendant or the EEOC, such as reassignment to undesirable work duties;[40] unfair reprimands;[41] threats of deportation, revenge, or physical harm;[42] being followed by Rivera, on delivery routes or outside of work, in a manner Plaintiffs considered threatening to their personal safety;[43] eviction from company housing;[44] or termination.[45]

All of these incidents, if proven, could qualify as an "adverse employment action" for purposes of a retaliation claim.  *McCoy*, 492 F.3d at 559 (in retaliation context, an adverse employment action is defined more broadly than in discrimination context, and encompasses "any action that 'might well have dissuaded a reasonable worker from making or supporting a charge of discrimination'") (quoting *Burlington*, 126 S. Ct. at 2415).  The retaliation inquiry is fact-intensive, and whether an employment action is adverse will depend upon the context.  *Burlington*, 126 S.Ct.

---

[40]   *See, e.g.,* Alvarado Deposition (Exhibit 13 to MPSJ), at 19-21.

[41]   *See, e.g.,* Gil Deposition (Exhibit 22 to MPSJ), at 56-63; Espinosa Deposition (Exhibit 17 to MPSJ), at 31-37; Ramos Deposition (Exhibit 34 to MPSJ), at 67-71.

[42]   *See, e.g.,* Castillo Deposition (Exhibit 14 to MPSJ), at 24, 62-63; Hernandez Deposition (Exhibit 23 to MPSJ), at 49-50.

[43]   *See, e.g.,* Miguel Paz Deposition (Exhibit 31 to MPSJ), at 11-13; Joel Sixtos Deposition (Exhibit 39 to MPSJ), at 10.

[44]   *See, e.g.,* Ramos Deposition (Exhibit 34 to MPSJ), at 80-85.

[45]   *See, e.g.,* Pedro Paz Deposition (Exhibit 32 to MPSJ), at 61-64.

at 2415; *McCoy*, 492 F.3d 560-61.   Moreover, Plaintiffs have demonstrated fact

questions as to whether the alleged adverse actions were causally connected to their

protected behavior, whether because of a temporal connection[46] or because of alleged

statements by Rivera or others that directly referenced the protected activity.[47]   The

inquiry into causal connection is also "highly fact specific."   *Nowlin v. Resolution*

*Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994).   Summary judgment on Plaintiffs'

retaliation claims is denied as to all Plaintiffs except Isaac Peña Ramirez.

## B.   FLSA Limitations Period

Defendant argues that Plaintiffs cannot recover under the Fair Labor Standards

Act, 29 U.S.C. § 201 *et seq.*,  for alleged violations occurring more than three years

before Plaintiffs first asserted the claim in their Second Amended Complaint, which

was filed on December 4, 2006.[48]   Plaintiffs have not responded to, and appear not

to oppose, Defendant's argument.

For FLSA overtime claims, a two-year limitations period generally applies. 29

U.S.C. § 255(a); *Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003), *cert.*

---

[46]     *See, e.g.*, Alvarado Deposition (Exhibit 13 to MPSJ), at 53.

[47]     *See, e.g.*, Castillo Deposition (Exhibit 14 to MPSJ), at 12-13; Gil Deposition (Exhibit 22 to MPSJ), at 50-51.

[48]     *See* Second Amended Complaint [Doc. # 45].  Defendant's Motion states that the claim was brought on December 5, 2006, and therefore requests the Court to bar recovery for violations occurring before December 5, 2003.  The Court's filing records, however, indicate that Plaintiffs' Second Amended Complaint was filed on December 4, 2006.

*denied*, 540 U.S. 1177 (2004). If, however, a plaintiff can establish a willful violation of the FLSA, a three-year limitations period applies. *Id.* Therefore, the relevant limitations period will be two or three years, depending on whether Plaintiffs establish willfulness at trial. In either case, Plaintiffs cannot recover unpaid wages earned before December 4, 2003.

Summary judgment is granted on all FLSA claims for violations occurring before December 4, 2003.

### C.   Assault and Battery

Defendant argues that it cannot be held liable for alleged assault and battery by its employees (Rivera and Halsey) because the alleged assault was outside the scope of their employment with Defendant.[49]

Under Texas law, to establish that assault was within the scope of employment, Plaintiffs must prove that Rivera and Halsey were acting (1) within the general authority given them, (2) in furtherance of Defendant's business, and (3) for the accomplishment of the object for which they were employed. *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006); *Goodyear Tire and Rubber Co. v. Mayes*, 2007 WL 1713400, at *2 (Tex. June 15, 2007).

Where an intentional tort is committed in the accomplishment of a duty

---

[49]    MPSJ, at 62. Under Texas law, assault and battery claims are governed by a two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon 2002).

> entrusted to the employee, rather than because of personal animosity, the employer may be liable.  A principal is responsible for an unlawful act of his agent where the act is committed by the agent for the purpose of accomplishing the mission entrusted to him by his principal.  If the purpose of serving the master's business actuates the servant to any appreciable extent his acts are within the scope of his employment.  However, when the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone.

*Bodin*, 462 F.3d at 484-85 (internal quotation marks and citations omitted).  Although assault ordinarily is outside the scope of employment, resolving the issue requires a determination as to the employees' motivation for the alleged assault—which, generally, is a question of fact.  *Id*. at 485.

As for the first element—whether the alleged assault was within the general authority given to Rivera and Halsey—evidence from both sides establishes that Defendant left the warehouse generally, or entirely, in Rivera's hands.  Defendant cites to the affidavit of Shipley, III, which states that no supervisor was authorized to use physical force of any sort on other employees.[50]  However, the affidavit also states that Shipley, III, and his father worked in the front office and "did not regularly work or interface with the warehouse workers," other than the supervisors; that Shipley, III, does not speak Spanish; that (at the times relevant to this lawsuit) requests to him from warehouse workers came to him through the supervisors (*i.e.*,

---

[50]     Affidavit of Lawrence William Shipley, III (Exhibit 69 to MPSJ), ¶ 24.

Rivera, Halsey, and Garcia); and that his primary source of information about warehouse operations was "from the supervisors, as well as [his] own observations."[51] In other words, the summary judgment record contains evidence that the supervisors' authority to run the warehouse was broad and often unchecked.

As to the second and third elements, Plaintiffs argue that Rivera and Halsey assaulted Plaintiffs as a form of discipline and intimidation, in furtherance of Defendant's business.[52]   Defendant argues that, under Plaintiffs' theory that the alleged behavior was intended to harass Plaintiffs, the behavior would have detracted from Defendant's business and, as a matter of law, cannot be within the scope of employment.[53]   However, the facts could alternately support a theory that the alleged behavior served to discipline and intimidate warehouse workers, and thus was "committed in the accomplishment of a duty entrusted to the employee." *See Bodin*, 462 F.3d at 484-85.  The summary judgment record contains evidence that Rivera and other supervisors carried guns in the workplace, that the supervisors showed the

---

[51]     *Id*. ¶¶ 14-15.  Many Plaintiffs corroborated these facts, testifying that the Shipleys did not keep an eye on Rivera in the warehouse.  *See, e.g.*, José Maldonado Deposition (Exhibit 30 to MPSJ), at 15-16 (Shipley, Jr. and Shipley III "did something pretty grave [by] not checking on Jimmy Rivera"); Pedro Paz Deposition (Exhibit 32 to MPSJ), at 66 (when Paz and his wife complained to Shipley III, Shipley III said he did not care what happened in the warehouse).

[52]     *See* Response, at 69 (alleging that Defendant knowingly and purposefully operated the warehouse as a "sweatshop" to exploit uneducated workers in order to maximize company profits, and that the physical assaults served to manipulate and control the workers).

[53]     MPSJ, at 65.

weapons to employees, and that the employees were intimidated.[54]  The allegations

that the assaults were committed frequently, or even daily,[55] supports Plaintiffs'

claims that the assaults were in furtherance of Defendant's business and to

accomplish the objective of Rivera's and Halsey's employment—namely, running the

warehouse.

Whether Rivera and Halsey acted out of personal animosity, or out of duty to

their employer, is not clear at this stage, but the question's existence precludes

summary judgment on Plaintiffs' assault and battery claims.

## IV.   <u>CONCLUSION</u>

For all the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion for Partial Summary Judgment [Doc. #

78] is **GRANTED in part and DENIED in part**.  Specifically, summary judgment

is granted on (1) Plaintiffs' claims under 42 U.S.C. § 1981 for hostile work

environment and retaliation based on national origin, (2) Isaac Peña Ramirez's

---

[54]     *See, e.g.*, Castillo Deposition (Exhibit 14 to MPSJ), at 25.

[55]     *See, e.g.*, José Maldonado Deposition (Exhibit 30 to MPSJ), at 18-22 (Rivera grabbed his private parts repeatedly); Isaac Peña Ramirez Deposition (Exhibit 33 to MPSJ), at 42-43 (Rivera grabbed or slapped his bottom sometimes two or three times a day); Winger Ramos Deposition (Exhibit 34 to MPSJ), at 53-58 (on two occasions, Halsey grabbed Ramos and pushed his body against Ramos', and on another occasion Halsey grabbed and squeezed his bottom; Rivera touched him offensively two or three times a week, including holding his testicles, grabbing his penis, putting sexual toys in his bottom); Castillo Deposition (Exhibit 14 to MPSJ), at 51-53 (Halsey touched his buttocks and, on one occasion, pushed Castillo and caused his to crash into flour pallets).

retaliation claims under Title VII and § 1981, (3) Plaintiffs' FLSA claims for violations occurring before December 4, 2003, and (4) Plaintiffs' claims for assault and battery occurring outside the two-year limitations period.   Summary judgment is denied as to all other claims.

SIGNED at Houston, Texas, this **30th** day of **November, 2007**.

Nancy F. Atlas
United States District Judge